[No. B032258. Second Dist., Div. Seven. Mar. 14, 1989.]

SAMUEL UNJIAN, Plaintiff and Appellant, v.
WALTER BERMAN, Defendant and Respondent.

COUNSEL

Bruce A. Friedman for Plaintiff and Appellant.

Schmid & Grogman, Susan H. Schmid and Michael H. Miller for Defendant and Respondent.

OPINION

**JOHNSON, J.**—Samuel Unjian brought this medical malpractice action against Dr. Berman alleging the face-lift Berman performed left Mr. Unjian with a worse face than before surgery. The trial court granted Berman's motion for summary judgment on statute of limitations grounds and dismissed the action. We reverse.

There is no dispute over the facts presented to the trial court. The question on appeal is whether those facts were sufficient to entitle Berman to a judgment of dismissal.

### FACTS BEFORE THE TRIAL COURT

On November 23, 1982, Dr. Berman performed a face-lift on Mr. Unjian. The day before the operation Mr. Unjian executed an agreement to submit any dispute arising out of Dr. Berman's care and treatment to binding arbitration. On December 13, 1982, Mr. Unjian mailed Dr. Berman a written revocation of the arbitration agreement. Mr. Unjian was asked at his deposition why he mailed the revocation. He replied, "A. The appearance of my furrows were there again after the normal swelling and what have you period of time was gone. I could see there was no improvement in my face. Actually, I felt even a little more gaunt; A [*sic*] little more worse. But at least there was no—it looked worse. My face looked worse.

"Q. And because of that you felt that you should revoke the arbitration agreement?

"A. Yes."

The evidence at the hearing established Mr. Unjian remained in Dr. Berman's care until October 19, 1983. During the period between the surgery and the date Dr. Berman last saw Mr. Unjian, Mr. Unjian questioned Berman several times about the cause of the infection on his face. Berman's notes for October 19, 1983, state, "Once again discussed possible suture reaction and approaches to same. Possible old acne cysts." At Berman's

deposition the following colloquy took place: "Q. Did you have an opinion at the time as to what caused the infection?

"A. No. But I told him it could have been the same thing I mentioned a few times to you, that it could be from his old acne."

Mr. Unjian filed this action on September 24, 1984.

## DISCUSSION

A summary judgment is only proper when the moving party has established there are no triable issues of material fact and judgment must follow as a matter of law (Code Civ. Proc., § 340.5.). ■■■ The unrebutted evidence presented by defendant must establish beyond dispute the plaintiff failed to bring his action within three years after the date of injury or one year after he discovered, or through the use of reasonable diligence should have discovered, the injury. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].) Summary judgment cannot be granted on the basis of reasonable inferences deducible from the evidence if contradicted by other reasonable inferences. (Code Civ. Proc., § 437c, subd. (c); *Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 318 [229 Cal.Rptr. 627].)

Assuming the injury to Mr. Unjian occurred on November 23, 1982, the date of his surgery, his action, filed on September 24, 1984, was timely unless more than a year before he filed suit Mr. Unjian discovered, or should have discovered through reasonable diligence, both the injury and the negligent cause of the injury. (*Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 759 [199 Cal.Rptr. 816].)

■■■ Dr. Berman contends Mr. Unjian knew of his injury and its negligent cause at least by December 13, 1982, the day Mr. Unjian sent the letter revoking the arbitration agreement. He bases this contention on Mr. Unjian's deposition testimony that after Dr. Berman's surgery his face looked worse and, because his face looked worse, he cancelled the arbitration agreement. For the reasons explained below we conclude these facts, even though not disputed, do not negate the existence of triable issues of fact on the question of discovery.

### A. The "Worse Face" Scenario

Dr. Berman points to the allegation in the complaint he had guaranteed the surgery would lessen the furrows in Mr. Unjian's face and make it look much better. He then cites Mr. Unjian's deposition testimony after the bandages had been removed and the swelling had gone down the furrows were still there and "my face looked worse." Dr. Berman argues the obvious

disparity between the result promised and the result achieved would put a reasonable person on notice "something had gone wrong."

The fact an operation did not produce the expected result would not necessarily suggest to the ordinary person the operation had been performed negligently. In *Pink* v. *Slater* (1955) 131 Cal.App.2d 816 [281 P.2d 272] the plaintiff employed the defendant doctor to remove scars from her face and nose. After the operation her appearance was worse than before and her face became infected. At trial plaintiff presented no medical testimony that there was negligence. Instead she relied on the doctrine of res ipsa loquitur. In affirming the judgment for defendant the court observed res ipsa loquitur would not apply in this case because it does not follow as a matter of common knowledge that the injury plaintiff suffered would not have occurred without negligence. (*Id.* at p. 818.)

Where, as here, the injury is obvious but there is nothing to connect that injury to defendant's negligence it cannot be said as a matter of law the plaintiff's failure to make an earlier discovery of fault was unreasonable. (Cf. *Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 358-359 [138 Cal.Rptr. 20].) This is especially true in cases such as the one before us where the plaintiff continues under the doctor's care, does inquire about the cause of his apparent injury and is given an explanation calculated to allay any suspicion of negligence on the doctor's part.

In *Fitzpatrick* v. *Marlowe* (Tex.Civ.App. 1977) 553 S.W.2d 190 plaintiff went to the defendant for removal of a small lump from her nose. After the first operation her nose swelled and the bump remained. Defendant performed a second operation which left the plaintiff with a dip in her nose instead of a bump. The court held these facts were not sufficient to establish discovery of defendant's negligence given evidence defendant had assured her application of cocoa butter and cortisone shots would correct the condition. The court noted because the doctor-patient relationship is one of trust and confidence the plaintiff was entitled to rely on defendant's statements until she came into possession of such facts or knowledge that would lead a prudent person to suspect otherwise. The fact plaintiff could see the result of the surgery on her face did not supply the requisite knowledge. Plaintiff "had no expertise concerning the treatment of her injury. She relied on [defendant's] statements promising future treatment and improvement." (*Id.* at p. 194.)

In *Burns* v. *Bell* (D.C.App. 1979) 409 A.2d 614, as in the case before us, the plaintiff employed the defendant doctor to perform a face-lift. After the surgery plaintiff had "gross scars," numbness and a "pins-and-needles" sensation around the surgical area. Defendant assured her the scars would improve and the numbness would subside. When plaintiff filed suit some

seven years later the defendant sought dismissal under the statute of limitations. Addressing the issue of discovery, the court stated: "Appellee contends that the patient knew of her injury soon after the operation. It is argued that she could see for herself the condition of her face. This approach overlooks the fact that appellant may have relied upon appellee because she herself had no medical expertise and no other accurate way of knowing whether the assurances given her were reasonable. To require a patient to scrutinize to a fine degree the advice given by a treating physician, at the risk of losing his right to legal redress seems unwise. Thus the determination of when appellant should have reasonably discovered her injury under the instant circumstances is, in our view, a question of fact and should have been submitted to the trier of fact." (*Id.* at p. 617.)

In the case before us, Mr. Unjian could see the furrows were still in his face and could see the infection where the sutures had been. When he inquired about these he was told by Dr. Berman the infection was possibly caused by old acne cysts. A trier of fact could reasonably conclude that, in light of the fiduciary relationship between Mr. Unjian and Dr. Berman, Mr. Unjian was justified in accepting Berman's explanation for his condition following surgery. Thus, summary judgment was not justified on the basis that Mr. Unjian ended up with a worse face. (Cf. *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 435-438 [186 Cal.Rptr. 228, 651 P.2d 815].)

Although we have found no California cases involving face-lifts, California law follows the same rationale as expressed in *Fitzpatrick* v. *Marlowe* and *Burns* v. *Bell* discussed *supra*. The leading case is *Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d 93, in which the court described the diligence reasonably expected of the plaintiff while still under the defendant's care. "[T]he patient is fully entitled to rely upon the physician's professional skill and judgment while under his care, and has little choice but to do so. It follows, accordingly, that during the continuance of this professional relationship, which is fiduciary in nature, the type of diligence required of a patient in ferreting out and learning of the negligent causes of his condition is diminished." (18 Cal.3d at p. 102.)

We note, however, the court in *Sanchez* went on to say: "In their motion for summary judgment defendants rely on plaintiff's deposition which reveals that she was dependent upon the exclusive care of defendants through March 30, 1972. However, her reasonably founded suspicions were undeniably aroused during this period, both by her own recognition of her symptoms and by external corroboration. Plaintiff admits she did *not accept defendant Pilson's assurances at face value*. Under these circumstances, it is arguable that plaintiff was on notice of defendants' negligence prior to March 30." (18 Cal.3d at p. 102.) (Italics added.)

The *Sanchez* court appears to be limiting the right of a patient to rely on a lesser standard of "diminished" diligence in the discovery of wrongful treatment by the physician while the physician-patient relationship continues. If evidence exists which shows that the patient does not take the physician's "assurances at face value," then it may be as suggested in *Sanchez,* that the "diminished duty to discover period" has either terminated or has been attenuated.

The act of Unjian, in forwarding the revocation of consent to arbitration to Dr. Berman, coupled with his deposition explanation of the reason for sending the revocation, present triable issues of fact as to appellant's entitlement to rely on a decreased duty "to ferret out and learn of the negligent causes of the condition" mentioned in *Sanchez.*

Cases following *Sanchez* have found the issue of diligence of discovery to be a question of fact when the plaintiff, while under the defendant's care, inquired about an apparent injury and was given an explanation inconsistent with negligence on defendant's part. (See, e.g., *Enfield* v. *Hunt* (1979) 91 Cal.App.3d 417, 422-423 [154 Cal.Rptr. 146]; *Brown* v. *Bleiberg, supra,* 32 Cal.3d at p. 438; *Kilburn* v. *Pineda* (1982) 137 Cal.App.3d 1046, 1049-1050 [187 Cal.Rptr. 548].)

Dr. Berman attempts to distinguish the instant case on the ground there was no evidence produced at the summary judgment hearing Mr. Unjian relied on Berman's explanation of the cause of Mr. Unjian's injuries. No such evidence was necessary. The burden was on Berman, as the moving party, to establish by uncontradicted evidence Mr. Unjian did *not* rely on Berman's explanation. (See, *Estate of Fisher* (1988) 198 Cal.App.3d 418, 425 [244 Cal.Rptr. 5].) Furthermore, courts will give the patient the benefit of an assumption of reliance on the physician during the continuation of the doctor-patient relationship. (*Brown* v. *Bleiberg, supra,* 32 Cal.3d 426, 438, fn. 9.) However, footnote 9 of *Brown* terminates with the following language: "There was nothing in the circumstances in which plaintiff discontinued her treatment by Dr. Bleiberg to suggest *any loss of trust* in him." (Italics added.)

Likewise, the *Brown* court appears to be limiting the patient's "diminished duty to discover" physician wrongdoing during the period of continuing treatment if evidence is extant which indicates "any loss of trust" in the physician.

While we find a triable issue of material fact as to the existence of "any loss of trust" in Dr. Berman by Unjian in the sending of the revocation of consent to arbitration letter, the period of diminished duty to be diligent in discovering physician wrongdoing was conceivably terminated by the

"assurances at face value" standard in *Sanchez* or the "any loss of trust" standard in *Brown*.

### B. *Inferences From Cancellation of the Arbitration Agreement*

Dr. Berman next argues the only reasonable inference that can be drawn from Mr. Unjian's cancelling the arbitration agreement is that Mr. Unjian believed Berman negligently performed the face-lift and he was planning to sue Berman. Berman supports this argument with the agreed fact "Plaintiff revoked the arbitration agreement because he believed that as a result of Dr. Berman's surgery his face looked worse." Therefore, Berman argues, the uncontradicted evidence compels the conclusion Mr. Unjian had discovered or suspected negligence by December 12, 1982, the date he mailed the revocation letter.

We do not believe the inference drawn by Dr. Berman is the only reasonable inference that can be drawn from Mr. Unjian's action. Therefore, the act of sending the revocation letter because "[his] face looked worse" cannot support a summary judgment. (*Hills* v. *Aronsohn, supra,* 152 Cal.App.3d at p. 759.)

Initially, we note Mr. Unjian's letter to Dr. Berman made no mention of dissatisfaction with Berman's performance or the result. It reads, in its entirety, "Dear Dr. Berman, I wish to exercise my option as indicated in paragraph 4 and withdraw from the Patient-Physician Arbitration Agreement that I signed November 22, 1982." Mr. Unjian's letter is in sharp contrast to the letter from a patient to his physician held to support summary judgment in *Hirschman* v. *Saxon* (1966) 246 Cal.App.2d 589 [54 Cal.Rptr. 767]. In that case the patient responded to a bill from his doctor with a letter stating in part, " 'The only reason I have not paid you, as you are aware, is the fact that the results I have received in re to my broken finger, have not been very satisfactory.

" 'I feel that the bill is unjust due to the results of setting the finger. In fact, I was going to turn this whole matter over to my attorney, but I realize you want to be fair and just in this matter I am willing to settle this account of $70.00, which I feel is more than just, or I am willing to turn the file over [to] the Medical Board for their evaluation on the case.' " (246 Cal.App.3d at pp. 590-591.) The court in *Hirschman* found the patient's letter negated any argument he was unaware of the doctor's fault for more than a year before filing suit. (*Id*. at p. 592.)

It is also noteworthy Mr. Unjian did not testify at his deposition he cancelled the arbitration agreement because he believed or suspected Dr. Berman had performed negligently. He testified he cancelled the agreement because "my face looked worse." Counsel for Dr. Berman could have nailed

the matter down at that point by asking a question such as "Did you think, at that point, Dr. Berman did something wrong?" or "Did you have a suspicion at that time there was malpractice?" Mr. Unjian was never asked any such question. Instead, counsel chose to leave the matter with Mr. Unjian's testimony he revoked the agreement because his face looked worse and rely on an inference from that testimony Mr. Unjian believed or suspected negligence.

A trier of fact may draw the inference urged by Dr. Berman. The problem, as far as summary judgment is concerned, is that other inferences could be drawn by the trier of fact. Mr. Unjian could have simply wished to keep his options open or he may have believed it was a mistake to sign the agreement giving up the right to a jury trial in the event any dispute should arise between Dr. Berman and him in the future. The arbitration agreement was not limited to malpractice actions but included "actions to collect debts or any other kind of civil action." Recalling Dr. Berman's "guarantee" his face would look better after surgery, Mr. Unjian may have believed the fact his face looked worse would entitle him to a refund of all or part of the cost of surgery regardless of how competently Dr. Berman performed it.

It was not in the province of the trial court to choose among the several reasonable inferences that could be drawn from Mr. Unjian's action and his explanation for that action. This was a question to be resolved at trial.

### DISPOSITION

The judgment is reversed. Appellant is awarded costs on appeal.

Lillie, P. J., and Woods (N. F.), J., concurred.

Respondent's petition for review by the Supreme Court was denied May 23, 1989.