Albert J. GALEN, Executor of the
Estate of Albert Levinson,
Deceased, Plaintiff,

v.

MOBIL OIL CORPORATION, a New
York corporation; Mobil Exploration &
Producing U.S., Inc., a Delaware corpo-
ration; and Does 1 through 50, inclusive,
Defendants.

No. CV 95–3686 KMW (RNBx).

United States District Court,
C.D. California.

March 18, 1996.

Robert J. Clark, Robert D. Goldberg, Christopher L. Mass, Bienstock & Clark, Santa Monica, CA, for plaintiff.

Ward L. Benshoof, Steven J. Vining, Teri L. Breuer, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, CA, for defendants.

Memorandum of Opinion

WARDLAW, District Judge.

Alleging that Mobil concealed the existence of a sump full of oil field waste and trash on property it sold to Albert Levinson, Levinson's estate (the "Estate") sued Mobil. Mobil now moves for summary judgment on the Estate's rescission, nuisance, trespass, equitable indemnity, unjust enrichment, and declaratory relief claims. The rescission and unjust enrichment claims are time-barred. The sales agreement's express provisions preclude the Estate from making nuisance, trespass, equitable indemnity, and declaratory relief claims. Thus, this Court **GRANTS** Mobil's motion.

## I. THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party resisting summary judgment has an affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence will not suffice. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.1992) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## II. RESCISSION CLAIM

Mobil argues that the Estate's rescission claim is time-barred because Levinson discovered facts allegedly constituting fraud more than four years before his Estate filed suit against Mobil.

### A. Applicable Statute of Limitations

California Code of Civil Procedure Section 337 provides a four-year limitations period for an action on a contract. Cal.Civ.Pro. Code § 337. "The time [for an action based upon the rescission of a contract in writing] begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred." *Id.* § 337(3). However, "[w]here the ground for the rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.*

█ The parties agree that "facts that [allegedly] entitle the [Estate] to rescind" occurred in February 1988 when Levinson purchased the property.[1] Because more than four years elapsed between 1988 and 1995, when the Estate filed suit, its rescission claim is time-barred unless it can show that section 337(3)'s fraud exception applies.

### B. Judge Kelleher's Findings

Previous findings of fact and conclusions of law in this case govern the evaluation of the fraud exception. In December 1995, Mobil moved for summary judgment on the Estate's fraud, waste, concealment, and misrepresentation claims. The applicable statute of limitations for these claims is three years. Judge Robert J. Kelleher heard the motion. He found that Levinson had actual or constructive knowledge of the buried sump more than three years before April 14, 1995, the date on which the Estate filed suit. Thus, he held that these claims were time-barred. *See* Order of Judge Kelleher (January 9, 1996).

Judge Kelleher did not specify the date by which Levinson had actual or constructive knowledge. Thus, this Court must determine whether, under Judge Kelleher's findings, Levinson had actual or constructive knowledge of the sump more than four years before the Estate filed suit.

### 1. Findings of Fact

### a. Purchase of the Land

Albert Levinson purchased a tract of land from Mobil for $3 million on February 19, 1988. Although Mobil had received a $4 million bid for the tract, it accepted Levinson's offer, conditioning its acceptance on his agreeing to forego further soil testing.[2] In

---

1. The Estate asserts that it is entitled to rescind because it "ha[s] real property substantially different from and inferior to that which [Levinson] bargained for and paid for and intended to purchase." First Am.Compl. ¶ 85. It also asserts that Mobil's alleged "conceal[ment] from Levinson [of] material facts known to [it], specifically

the existence and extent of the contamination" is a ground for rescission. *Id.* ¶ 88. Both of these alleged bases for rescission existed in 1988.

2. Shortly after the purchase of the 7 acre property, Pacific Bell offered to pay Levinson $5.2

the closing documents, Levinson stated that he had inspected the property and was "satisfied as to [its] physical and environmental condition, both surface and subsurface...." Breuer Decl.Ex. 1. He also agreed to take the land "as is" and "with all faults." *Id.*

When the sale occurred, a sump full of oil field waste, tree trunks, construction waste, and trash existed on the property. Uncompacted fill dirt concealed it. However, it did not appear on a map of the tract included in the legal documents memorializing the sale. *Id.*

### b. Pre-purchase "Red Flags"

Arguing before Judge Kelleher, Mobil contended that several pre-purchase "red flags" alerted Levinson to the existence of the sump. In 1987, when he expressed interest in the property, Marlin Brown, a Mobil employee, sent him a packet of documents entitled "Invitation to Bid" and dated March 26, 1987. Brown mailed Levinson another "Invitation to Bid" dated June 1, 1987. Judge Kelleher found that one of these packets contained a map that had originally been prepared as an exhibit to a 1970 lease. It depicted the sump.[3]

Subsequently, in a telephone conversation, Levinson asked Brown to tell him about the property. Brown did not disclose the existence of the buried sump. Brown Depo. at 47:17–48:9. However, he told Levinson that the tract had been an oil property since World War II and that "the roughnecks weren't as careful in years past with ... oil production, and so there was liable to be ... the usual oil field stuff there." (*Id.* at 977:5–10.)

### c. Post-purchase "Red Flags"

Mobil also claimed that after Levinson bought the tract, he received more "red flags," such as maps depicting the sump and soil contamination reports, alerting him to the sump's existence.

#### i. Maps

On February 22, 1988, Brown sent letters to the tenants leasing the tract informing them of the sale. He attached the map that had been an exhibit to a 1970 lease and that depicted the sump. He copied them to Robert Cannon, Levinson's office manager. Cannon showed the letters and the maps to Levinson. Cannon Depo. at 111:10–113:2.

Brown also sent a letter to the Deputy Director of California's Division of Oil & Gas, notifying him of the sale of an oil producing property. Brown enclosed a map of the property that did not depict the sump. He copied this letter to Cannon.

#### ii. Osborne Report

Shortly after the purchase, Levinson commissioned a soil investigation from Osborne Engineering; he wanted to know whether subsurface soil conditions would permit the construction of a tilt-up concrete building. Osborne employee Karl Blaufuss conducted the investigation. In his "Preliminary Soils Engineering Report," dated December 30, 1988, he stated that one purpose of the report was to "determine the type(s) and condition of subsurface soil structures." Blaufuss Decl.Ex. A at 1. Another purpose was to alert readers of the report to the presence of contamination; however, Blaufuss did not analyze the observed contamination or characterize the contaminants. *Id.;* Blaufuss Depo. at 51:6–16.

The Geotechnical Boring Log appended to the report described samplings of subsurface

---

million for 4.25 acres of it. (Depo. of Jaffee at 110:2–113:10.) He refused this offer.

3. During his deposition, Brown authenticated two packets, acknowledging that they were the documents he had compiled as the "Invitation to Bid." Brown Depo. at 82:7–19. The authenticated March 1987 packet does not contain a map depicting a sump while the June 1987 packet contains such a map. *Id.* Exs. 2 & 3. Counsel for the Estate submitted copies of the "Invitation to Bid" that differ substantially from the authen-

ticated packets. Levinson's March 1987 packet contains a map depicting the sump while his June 1987 packet does not.

Nevertheless, uncontroverted evidence shows that Levinson had a copy of the map depicting the sump before he bought the tract. Mobil submitted copies of a fax transmittal from Robert Cannon, Levinson's office manager, to Albert Galen, Levinson's attorney. The transmittal is dated February 4, 1988 and contains a copy of the map.

soil as containing "[d]ark grey to black, wet, soft silty clay with rocks, concrete fragments, iron bars, wires, red bricks, ... tree trunks," "contaminated sand," "sand with [a] strong gasoline smell," "sandy silt mixed with asphalt," "wood chips," and "lumber." Blaufuss Decl. Appendix. A cross-section map appended to the report depicts a fill that contains "concrete blocks, wood chips, lumber, metal plates, steel bar and contaminated bluish clay." *Id.* The report did not characterize the contaminants in the contaminated sand.[4]

The report concluded that Levinson could develop the tract but that he would have to clean the property and remove some soil:

> Adverse subsurface soil conditions were encountered on the site at the time of the exploration at the locations and to the depth explored. The property is generally satisfactory for the proposed development. Surficial soils are trash filled fill, and must either be removed and replaced with suitable fill, or penetrated by piling to the sound underlying stratum.

Blaufuss Decl.Ex. A at 3. Blaufuss has testified that the report did not conclude that a "sump used exclusively for the purpose of oil fuel waste, such as drilling waste" existed on the property. Blaufuss Depo. at 70:21–24.

Cannon received the report sometime before April 14, 1989. He has testified that he showed it to Levinson.

#### d. Discovery of Sump

Levinson died in February 1992. The Internal Revenue Service required his estate to appraise all of his holdings. To comply with this requirement, it hired an environmental engineer to complete environmental studies of the tract. In 1993, she discovered the drilling muds and trash commingled in the sump. After testing it, she determined that hazardous materials such as benzene were present. She also found that perched ground water had saturated it and that it was unstable.

### 2. Conclusions of Law

#### a. Applicable Law

■ Section 338 of the California Code of Civil Procedure provides that a party must bring a cause of action for fraud within three years of "the discovery, by the aggrieved party, of the facts constituting the fraud...." Cal.Civ.Pro.Code § 338(d) (West Supp.1995). The discovery rule states an exception to the strict operation of this statute of limitations. Under the rule, "the statute of limitations does not begin to run until the plaintiff [has] discovered or had notice of all facts which are essential to the cause of action." *Saliter v. Pierce Bros. Mortuaries,* 81 Cal.App.3d 292, 296, 146 Cal.Rptr. 271, 274 (1978). A plaintiff invoking the discovery rule defense must "establish[ ] facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 437, 159 P.2d 958 (1945).

■ The plaintiff must be aware both that it has sustained injury and that wrongdoing caused the injury. *Ward v. Westinghouse, Canada, Inc.,* 32 F.3d 1405, 1407 (9th Cir. 1994). A court cannot necessarily infer from a plaintiff's knowledge of an injury that it knows any wrongdoing has occurred. *Id.* When nothing connects a plaintiff's injury to a defendant's wrongful acts, even where the injury is obvious, failure to make earlier discovery is not unreasonable. *Unjian v. Berman,* 208 Cal.App.3d 881, 885, 256 Cal.Rptr. 478, 479 (1989).

#### b. Application to this Case

The Estate's fraud claim is time-barred. Levinson arguably could have assumed that the sump depicted on the map in his "Invitation to Bid" packet had been cleared by the closing because the map appended to the sales documents did not depict a sump.

Receiving the copies of a map depicting the sump in Brown's post-sale letters, however, should have made him suspicious that the

---

4. At his November 1995 deposition, Blaufuss stated that plant roots were the contaminants in the contaminated sand. Blaufuss Depo. at 61:21–62:1. However, he never told Levinson or his agents that plant roots were the contaminants.

sump had not been cleared. After paying $3 million for the property, if he was unaware of the sump's existence, surely a call to Brown to ensure that the maps contained a clerical error was warranted.

Furthermore, although the Osborne report did not specifically find that a buried sump existed on the tract, its findings of contaminated soil and debris should have alarmed Levinson.[5] He knew that he had waived his right to extensive pre-sale soil testing. Thus, he also knew that he lacked the soil data to assume safely that the contaminants and debris were harmless.[6]

The Estate argued to Judge Kelleher that even if Levinson knew about injury to the property, he did not necessarily know that the injury resulted from any wrongdoing. Evaluating this case, however, Judge Kelleher could not find that "nothing connects [the] plaintiff's injury to [the] defendant's [allegedly] wrongful acts." *Unjian*, 256 Cal. Rptr. at 479. Brown had told Levinson that roughnecks using the property had not been careful when disposing of oil fields wastes. Blair, the resident lease manager, suspected the site had been used as a dump. This information connects the contaminated soil to possibly wrongful acts.

■ The Osborne report, post-sale letters, and Blair's suspicions gave Levinson, at a minimum, constructive notice of the sump and the alleged concealment of the sump by April 1989. More than three years elapsed between April 1989 and April 1995 when the

Estate filed suit. Thus, the fraud claim is time-barred.[7]

### c. Application to the Rescission Claim

■ Because Levinson had actual or constructive knowledge of the facts allegedly constituting fraud by April 1989, section 337(3)'s fraud exception does not save the rescission claim. To rescind the contract on fraud grounds, he had to file suit by April 1993. He failed to do so. Thus, the claim is time-barred.

At oral argument, counsel for the Estate conceded that if the Court did not reconsider Judge Kelleher's order, then the rescission claim would be time-barred, and so too would fall plaintiffs' unjust enrichment claim, which is based on the contract. There was no basis urged or found upon to which to reconsider Judge Kelleher's order.

## III. NUISANCE AND TRESPASS CLAIMS

Mobil argues that the Estate cannot rescind the contract, so it is bound by contract language that precludes its nuisance and trespass actions.

### A. Contract Language

The contract of sale states that Levinson "inspected the property and premises and satisfied [himself] as to their physical and environmental condition both surface and subsurface." Breuer Decl.Ex. 1, at ¶ 3. He agreed to take the property in its " 'as is, where is' condition and 'with all faults.' " *Id.*

---

5. They alarmed other people, such as Gwendolyn Tellegen, an environmental engineer hired to do environmental testing on the property for the estate. She reviewed the Osborne report during the course of her investigation. In her deposition, she stated, "[The report] indicated to me that this was going to have to be an area where we did some further site investigation, targeting specifically this area to determine what exactly this fill material was.... It raised a lot of questions, in other words." Tellegen Depo. at 96:12–18.

6. Even though Blaufuss testified in 1995 that he thinks the contaminants were plant roots, he did not convey this belief to Levinson. Thus, Levinson had no idea what kind of contamination Blaufuss had found.

7. The claims for negligence and waste are also time-barred. Section 338(b) of the California Code of Civil Procedure sets forth the applicable statute of limitations for waste, negligent nondisclosure, and negligent misrepresentation. The discovery rule also applies to waste and negligence actions. *CAMSI IV v. Hunter Technology Corp.*, 230 Cal.App.3d 1525, 1536, 282 Cal.Rptr. 80, 86 (1991). Thus, the limitation period does not commence until "the plaintiff discovers or should have discovered all facts essential to his cause of action, which is to say when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *Id.* (citations and emphasis omitted). Because, as stated above, Levinson could have discovered his causes of action in April 1989, they are time-barred.

The contract also provides that, at the closing date, Levinson assumed all of Mobil's legal duties arising from ownership of the tract. *Id.* at ¶ 2(a).

## B. "As Is" Language Precludes Nuisance, Trespass Actions

California courts have held that "any sale of property 'as is' is a sale of the property in its 'present or existing condition'; the use of the phrase 'as is' relieves a seller of real property from liability for defects in that condition." *Shapiro v. Hu,* 188 Cal.App.3d 324, 333, 233 Cal.Rptr. 470, 476 (1986). The *Shapiro* court reasoned that "an 'as is' provision in any sale puts potential buyers on notice that the seller makes no warranties about the quality or condition of the thing sold." *Id.* at 475. It is a "red flag" that warns "the buyer that the goods or property to be sold may not be in perfect condition or of ideal quality." *Id.*

■ The Estate's nuisance and trespass claims seek damages for the sump, which was a defect in the condition of the tract at the time of the sale. The "as is" language relieves Mobil of liability for this defect of condition and therefore precludes recovery on the nuisance and trespass claims.

## C. The Estate's Arguments

The Estate argues that *Shapiro* does not control because (1) the "as is" language does not shield a defendant from a continuing nuisance or trespass that it has fraudulently concealed and (2) express warranties in the bill of sale override the "as is" language.

### 1. Fraudulent Concealment

California courts have held that "[w]here the seller actively misrepresents the then condition of the property or fails to disclose the true facts of its condition not within the buyer's reach and affecting the value or desirability of the property, an 'as is' provision is ineffective to relieve the seller of" liability arising from the concealed condition. *Lingsch v. Savage,* 213 Cal.App.2d 729, 742, 29 Cal.Rptr. 201, 209 (1963).

### a. Fraud Claim is Time–Barred

Noting that the plaintiff in *Lingsch* pled a timely cause of action for fraud, Mobil argues that the Estate's fraud and rescission claims are time-barred, so it should not be allowed to avoid the effect of the contract language by arguing fraudulent concealment. This argument is persuasive in its logic.

■ *Lingsch* articulates a doctrine for rescinding part of a contract—the "as is" clause—on fraud grounds. In the instant case, the Estate cannot rescind any part of the sales contract on fraud grounds because the statute of limitations has run. The Estate is attempting to circumvent the statute of limitations for rescission by invoking the *Lingsch* doctrine. Other courts faced with similar situations have not allowed plaintiffs to circumvent the statute of limitations. *See Tucson Elec. Power Co. v. Westinghouse Elec. Corp.,* 597 F.Supp. 1102, 1105 (D.Ariz. 1984) (applying Arizona law and holding that when defendant asserted that an "as is" clause precluded plaintiff's negligence actions, plaintiff could not claim that the clause was unconscionable because the statute of limitations had run on the unconscionability issue).

Notably, the *Lingsch* court did not evince an intent to reject the policies and rationales that warrant precluding plaintiffs from bringing stale lawsuits. Indeed, these policies are especially relevant to the instant case. The key witness, Albert Levinson, is dead; he never spoke to anyone about the issues in this case, and he is not available for cross-examination. Furthermore, so much time has passed since the sale that other witnesses' memories have faded. This Court will not extend *Lingsch* to eviscerate the statute of limitations for the Estate's rescission claim.

### b. Estate's Use of Fraud is Not Defensive

The Estate argues that it may assert fraud as a defense even if its fraud claim is time-barred. However, arguing fraud in order to invoke *Lingsch* is offensive, not defensive. Thus, this argument fails.

■ California courts have held that "[w]here fraud is relief upon a defense merely, neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense." *French v. Construction Laborers Pension Trust*, 44 Cal.App.3d 479, 485, 118 Cal.Rptr. 731, 736 (1975) (*quotation omitted*). This doctrine protects defendants being sued by plaintiffs who wish to enforce a fraudulently procured contract after the statute of limitations for rescission has run. However, Mobil has not sued the Estate for breach of contract. Thus, the Estate is not using fraud to defend itself in a breach of contract action; instead, it is using fraud to obtain affirmative relief.

Other courts have found that claims similar to the Estate's were asserted offensively. In *Tucson Electric Power, Inc. v. Westinghouse Electric Corp.*, construing Arizona law, the plaintiff asserted negligent inspection, negligent misrepresentation, breach of contract, and strict liability for innocent misrepresentation claims. The defendant moved for summary judgment, arguing that the parties' contract expressly precluded actions in contract or tort. The plaintiff opposed the motion, arguing that the contract was unconscionable. The statute of limitations on the unconscionability claim had run; however, the plaintiff claimed that it was asserting unconscionability defensively, so the statute of limitations did not apply.[8] The court found that "the plaintiff [wa]s attempting to partially rescind a contract.... By waiting until the opposition, plaintiff [wa]s attempting to do that which it would not be permitted to do by a direct attack in the complaint." 597 F.Supp. 1102, 1105 (D.Ariz.1984). It held that unconscionability was "not being used defensively here at all but for offensive purposes." *Id.*

The statute of limitations bars the Estate's direct attack on the contract, so it is attempting to partially rescind it by invoking *Lingsch.* The Estate is using fraud arguments to obtain affirmative relief from Mobil, rather than to avoid paying damages to Mobil. Thus, the argument is offensive and time-barred.

### c. Newhall Does Not Save The Estate's Claims

The Estate also contends that it need not plead and prove fraud in order to strike the "as is" clause from the sales agreement. Instead, the Estate argues that it must merely claim that Mobil failed to disclosed material facts to Levinson before selling him the property, relying on *Newhall Land & Farming Co. v. Superior Court*, 19 Cal.App.4th 334, 23 Cal.Rptr.2d 377 (1993).

■ The *Newhall* Court decided that the doctrine of caveat emptor does not preclude a plaintiff from stating a cause of action for the breach of the duty to disclose a material and concealed defect. Caveat emptor is a common law doctrine under which the liability of a person selling land terminates when the buyer assumes control of the land. *Id.* at 385. When the seller knows or should know of hidden defects in the land that may pose unreasonable risks to persons on the premises, she must disclose these defects if she thinks that the buyer, exercising reasonable diligence, will not discover them. If she fails to make this disclosure, the caveat emptor doctrine does not apply. *Id.* at 386.

The *Newhall* court then considered whether a plaintiff may state a cause of action for the negligent breach of the duty to disclose to avoid the application of the caveat emptor doctrine or whether it must plead and prove fraud. *Id.* The court held that a cause of action for negligent nondisclosure was sufficient. *Id.*

This Court finds that *Newhall* does not save the Estate's nuisance and trespass claims. Even if the Court were to assume that the Estate correctly analogizes the caveat emptor doctrine to the "as is" clause, and it expressly declines to so find, *Newhall* merely restates the *Lingsch* doctrine. Thus,

---

8. Under Arizona law, the statute of limitations does not apply to a claim that is pleaded only as a defense. *McQueen v. First Nat'l Bank*, 36 Ariz. 74, 89, 283 P. 273, 278 (1929).

the Estate's arguments under *Newhall* must fail for the same reasons that its arguments under *Lingsch* fail.

The Estate urges that the "as is" language is not binding because Mobil allegedly negligently failed to disclose material facts before selling the tract to Levinson. The gist of the argument is that, like *Lingsch*, *Newhall* articulates a doctrine for rescinding part of a contract: A contracting party that can plead and prove negligent nondisclosure can rescind an "as is" clause.

■ The *Newhall* plaintiff, however, pled a timely cause of action for negligent nondisclosure, in contrast to the Estate here, whose rescission and negligent nondisclosure claims are time-barred.[9] The *Newhall* court did not address whether the plaintiff could circumvent the statute of limitations for rescission for negligent nondisclosure—the issue before this Court. As previously discussed *supra* at 10, logic and persuasive authority militate against extending the rationales of *Lingsch* and *Newhall* to undermine the statutes of limitation for rescission and negligent nondisclosure.

### 2. Contract of Sale Contains No Express Warranties

Alternatively, the Estate argues that express warranties in the sales contract obligate Mobil to abate the continuing nuisance and trespass.

#### a. Alleged Warranties

The Estate claims that Mobil agreed to pay the property's operating costs arising before the February 1988 sale:

[Mobil] shall be responsible for payment of all expenses incurred against operation of the property prior to [February 1, 1988].... "Expenses" under this section shall include any necessary and reasonable expenses incurred by [Mobil] in the operation, protection, or maintenance of the Properties transferred by this Assignment, Deed and Bill of Sale.

Breuer Decl.Ex. 1, at ¶ 1. Additionally, it claims that Mobil retained liability for claims arising from the sale of oil, natural gas, and other hydrocarbons produced on the tract:

[Mobil] shall (i) be responsible for any and all claims arising out of the production or sale of hydrocarbons from the Properties ... insofar as such claims relate to periods of time prior to the Closing Date and (ii) defend, indemnify and hold [Levinson] harmless from any and all such claims.

*Id.* at ¶ 2(c). Finally, it claims that Mobil retained liability for claims caused by its gross negligence or willful misconduct. *Id.* at ¶ 2(b).

#### b. Mobil's Response

Mobil argues that the contract specifically states that it contains no express or implied warranties:

This Assignment, Deed and Bill of Sale is executed without any warranty of title, either express or implied, without any express or implied warranty or representation as to the merchantability of any of the equipment or its fitness for any purpose, and without any other express or implied warranty or representation whatsoever.

*Id.* at ¶ 3. It also notes that Levinson assumed all of Mobil's legal duties arising from ownership of the tract:

[Levinson will] assume ... all duties and obligations of [Mobil], express or implied, with respect to [the tract], including, without limitation, those arising under or by virtue of any lease, contract, agreement, document, permit, applicable statute or rule, regulation or order of any governmental authority (specifically including, without limitation, *any* governmental request or requirement to plug, re-plug and/or abandon any well of whatsoever type, status, or classification, or *take any clean-up or other action* with respect to the property or premises).

*Id.* at ¶ 2(a) (emphasis added).

#### c. Analysis

■ Clearly, Mobil and Levinson contemplated that a clean-up was a duty or obligation of Mobil with respect to the tract. The Estate seeks an order of this Court, a

---

9. Order of Judge Kelleher (January 9, 1996).

governmental authority, compelling Mobil to pay for a clean-up or to pay the costs of failing to perform a clean-up. However, the contract specifically states that Levinson assumed responsibility for any clean-up that a governmental authority orders. Because the contract of sale specifically makes Levinson liable for a clean-up, the Estate cannot shift responsibility for a clean-up to Mobil.

## IV. EQUITABLE INDEMNITY AND DECLARATORY RELIEF CLAIMS

The "as is" language also bars the Estate's equitable indemnity and declaratory relief claims. These claims represent an attempt to shift liability for the sump to Mobil. (*See* First Amended Compl. ¶ 68 (alleging that Mobil must indemnify the Estate for losses associated with the sump); *id.* ¶ 79 (alleging that the Estate is entitled to a declaratory judgment that Mobil has the duty to remove the contaminated sump).) The Estate cannot shift liability to Mobil because the "as is" language relieves Mobil from liability for defects in the condition of the property. *Shapiro*, 233 Cal.Rptr. at 476.

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Mobil's Motion for Summary Judgment.

Mobil shall file a proposed judgment within ten days of receiving this memorandum of opinion.

IT IS SO ORDERED.