Charles WARD; Glenna Jo Canum Ward, Plaintiffs–Appellants,

v.

WESTINGHOUSE CANADA, INC.; West-inghouse Electric Corporation, Engi-neering Service Division, a division of Westinghouse Electric Corporation; Key Tronic Corporation, Defendants–Ap-pellees.

No. 93–15015.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 1994.

Decided Aug. 18, 1994.

Dianna Lyons, Kazan, McClain, Edises & Simon, Oakland, CA, and Chris R. Redburn, San Francisco, CA, for plaintiffs-appellants.

David M. Rosenberg–Wohl, Lasky, Haas & Cohler, San Francisco, CA, for defendants-appellees Westinghouse Canada Inc. and Westinghouse Elec. Corp.

**1406**

Julie A. Welsh, Archer, McComas & Lageson, Walnut Creek, CA, for defendants-appellees Key Tronic Corp.

Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Charles and Glenna Jo Canum Ward appeal a summary judgment for Westinghouse Canada, Inc. and Westinghouse Electric Corporation (Westinghouse) in the Wards' diversity action for personal injury and loss of consortium. The court concluded that the Wards' claim was barred by California's one-year statute of limitations for personal injury actions, Cal.Civ.Proc.Code § 340(3) (Deering 1991). *Ward v. Westinghouse Canada, Inc.,* 807 F.Supp. 91 (N.D.Cal.1992). We have jurisdiction under 28 U.S.C. § 1291, and reverse and remand.

### I.

From February 1979 to June 1990, Charles Ward worked for Delta Airlines as a reservations agent, spending approximately seven hours a day entering reservations into a computer terminal. He alleges that because of a defect in defendants' computer keyboard and computer system, he developed crippling tendonitis, a type of cumulative trauma disorder.

In his deposition, Ward testified that he first noticed a slight pain in his wrists as early as 1984. He testified that the pain and numbness in his wrists and arms gradually increased in 1988 and 1989. According to Ward, he initially attributed the pain to the many other things that he did with his wrists and arms besides use a computer: driving a car, participating in sports, and carrying heavy items. Clerk's Record ("CR"), Doc. 38, Ward Declaration, ¶ 6. On September 6, 1989, Ward complained about pain in his neck, shoulders, arm and hands to his chiropractor, Dr. Mark Whitemyer.[1] In the patient information form filled out in connection

with his September 6 visit to Dr. Whitemyer, Ward reported his wrist pain and wrote "Carpal tunnel??" CR, Doc. 38, Exh. A. The form also asked patients to indicate whether the medical condition was a work injury; Ward did not circle that response, but instead circled the answer, "Unknown cause." *Id.*

On October 4, 1989, Ward reported his symptoms to his Delta Airlines supervisor and asked for a referral to a specialist pursuant to his workers' compensation insurance. Ward also called his physician, seeking a referral. According to his physician's office assistant, Ward reported that he was having "problems with his wrist and arm from using [a] computer too much."

On October 16, 1989, Ward visited Dr. Paul Mills, an orthopedist. After examining Ward, Dr. Mills wrote Delta, notifying the company that Ward's injury was work-related and that his history was "compatible with a repetitive overuse phenomenon." Ward testified that Dr. Mills did not advise him to stop using the computer, but merely prescribed anti-inflammatory drugs and recommended physical therapy. CR, Doc. 38, Ward Decl. ¶ 7. In his October 16, 1989 letter to Delta Airlines, Dr. Mills informed Delta that he thought Ward could keep working despite his medical condition, but recommended that Ward use wrist splints and change the position of his computer keyboard, among other things.

In March 1990, Ward saw physical therapist Beth Weiss for treatment of his arm and wrist pain. He alleges that Ms. Weiss was the first person to suggest to him that the keyboard might be defectively designed, thereby causing his injuries. On April 5, 1990, Dr. Mills informed Delta Airlines that Ward could no longer work on the computer because it was continuing to injure him. On June 25, 1990, Delta terminated Ward from his position because he could no longer use a

---

1. Ward saw two other doctors in 1989, one in connection with allergies and another for treatment of a hernia. Ward complained of pain in

his arms to both doctors, but Ward testified that neither doctor suggested that the pain might be caused by computer keyboard usage.

computer. On October 16, 1990, the Wards filed this complaint.[2]

## II.

■ We review a summary judgment de novo to determine whether any genuine issues of material fact exist, viewing the evidence in the light most favorable to the Wards as the nonmoving party. *Stevens v. Moore Business Forms, Inc.,* 18 F.3d 1443, 1446 (9th Cir.1994).

■ The parties agree that California Civil Procedure Code § 340(3) supplies the applicable statute of limitations. Under § 340(3), any action for personal injuries, whether based on simple negligence or on a theory of products liability, must be brought within one year of its accrual. An action ordinarily accrues on the date of injury. *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). However, under the California delayed discovery rule, "the accrual date of a cause of action is delayed *until the plaintiff is aware of her injury and its negligent cause.*" *Id.* 245 Cal.Rptr. at 661, 751 P.2d at 926–27 (citation omitted) (emphasis added). In *Jolly,* the California Supreme Court explained that:

> Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury *was caused by wrongdoing, that someone has done something wrong to her....* [T]he limitations period begins once the plaintiff "has notice or information of circumstances to put a reasonable person on inquiry." A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff *has a suspicion of wrongdoing,* and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.

*Id.* at 245 Cal.Rptr. 662, 751 P.2d at 927–28 (footnote and citations omitted) (emphasis added). *See also Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520, 1525–26 (9th Cir.1994) ("Discovery is defined by the California courts as the point at which 'the plaintiff is aware of both the physical manifestation of the injury *and* [suspects] its negligent cause.' ") (citations omitted).

■ Thus, under the delayed discovery rule,[3] the statute begins to run when a reasonable person in the plaintiff's position is on "inquiry notice" of "potential wrongdoing." *Id.* Under California law, knowledge of an injury and its cause does not necessarily imply that any wrongdoing has occurred or that anyone is to blame. *See Unjian v. Berman,* 208 Cal.App.3d 881, 256 Cal.Rptr. 478 (1989) (plastic surgery patient who emerged from surgery looking worse than when he went in did not, as a matter of law, know that any wrongdoing had occurred); *Kilburn v. Pineda,* 137 Cal.App.3d 1046, 187 Cal.Rptr. 548 (1982) (plaintiff was not put on inquiry notice of malpractice, as a matter of law, even though she could not walk or stand after three back operations).

■ Ward filed suit on October 16, 1990, within one year from the time his orthopedist told him that his work on a computer was causing his injury and recommended changes in how Ward positioned his computer keyboard. The district court held that because Ward suspected that the computer was the source of his injury as of October 4, 1989, his suit was therefore time-barred. We agree that Ward suspected that his ailment may have been work-related as of October 4, 1989. The remaining question is whether a reasonable person in his position, knowing or suspecting that using a keyboard was the source

2. The Wards filed their complaint in state court, and Westinghouse removed the case to federal district court. 28 U.S.C. § 1441.

3. Westinghouse argues that California courts have limited the discovery rule to cases in which the "actual" harm does not become "appreciable" for many years. According to Westinghouse, paradigmatic discovery rule cases involve drugs or medical devices, whose manifestations of physical trauma are not apparent for many years. Even assuming that the discovery rule may be limited to cases involving latent harm, the rule clearly applies to the Wards' cumulative trauma disorder claim. As alleged in their complaint, and defined in their expert's declaration, such a claim would appear to fall into the category of "progressive occupational diseases" subject to the discovery rule. *Martinez-Ferrer v. Richardson-Merrell, Inc.,* 105 Cal.App.3d 316, 164 Cal.Rptr. 591 (1980).

of his trouble, would have been on inquiry notice of "wrongdoing" on this date in 1989.

Under California law, the question of when Ward was on inquiry notice of potential wrongdoing is a factual question. *See Hills v. Aronsohn,* 152 Cal.App.3d 753, 759, 199 Cal.Rptr. 816 (1984) ("[A] motion for summary judgment should not be granted where reasonable minds could draw different conclusions from the evidence presented."). As the party moving for summary judgment, Westinghouse was obligated to identify undisputed facts showing that, prior to October 16, 1989, Ward knew or should have known that his wrist injury was caused by someone else's wrongdoing.

Westinghouse relies, as did the trial court, on Ward's October 4, 1989, inquiry to Delta concerning possible workers' compensation coverage for a visit to a specialist in wrist ailments. However, workers compensation is a no-fault system. Cal. Const. art. 14, § 4; Cal.Lab.Code § 3600. Ward's request for coverage does not necessarily indicate knowledge or suspicion of wrongdoing. His statements merely expressed his concern that his job duties, which required him to work long hours on a computer, might be causing his injuries.

■ A jury could find that Ward's October 4 statement that his injury was caused by "using a computer too much" does not indicate that Ward was on inquiry notice of wrongdoing on the part of a third party. This statement indicates only that he suspected the cause of his injury was computer *overuse.* As the California cases make clear, the statute of limitations does not begin to run until "the plaintiff suspects or should suspect that her injury *was caused by wrongdoing, that someone has done something wrong to her."* *Jolly,* 245 Cal.Rptr. at 662, 751 P.2d at 927. The fact that Ward may have pinpointed the *factual cause* of his injury by that date is not dispositive in this case. Although some jurisdictions have adopted the position that a statute of limitations begins to run "when the plaintiff knows of her injury and its *factual cause,*" *id.* at 658 n. 4, 751 P.2d at 927 n. 4 *(citing United States v.*

*Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (concerning the Federal Tort Claims Act)), the California Supreme Court has made clear that this position "is not the rule in California." *Id.*

In this case, Ward used a common, workplace tool for many years without incident. The pain developed increasingly over time. A jury could find that a reasonable person in Ward's position would not have suspected a third party's *wrongdoing* caused his pain and injury; but rather, that computer overuse was the culprit. We cannot say, as a matter of law, that a reasonable person, acting during the relevant time period, would have become suspicious of possible wrongdoing by a third party after developing tendonitis from using a computer at work for long hours.

## III.

The unresolved fact question in this case—when was Ward chargeable with taking action based on the facts he knew—was not suitable for disposition by summary judgment. *See Hills v. Aronsohn,* 199 Cal.Rptr. at 819.[4]

REVERSED and REMANDED.

---

4. Of course, Westinghouse may present this statute of limitations question to the jury.