158 F.3d 1046
 Prod.Liab.Rep. (CCH) P 15,382, 98 Cal. Daily Op.
Serv. 7981,
98 Daily Journal D.A.R. 11,087
Erin Paige TUCKER, Plaintiff-Appellant,
v.
BAXTER HEALTHCARE CORPORATION; American Hospital Supply
Corp.; Heyer-Schulte Corp.; Mentor Corp.,
Defendants-Appellees.
 No. 97-55419.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1998.
Decided Oct. 26, 1998.
 
 Wes W. Wagnon, Liccardo, Rossi, Sturges & McNeil, San Jose, California, for plaintiff-appellant.
 David L. Schrader and Gregg D. Zucker, Brobeck, Phleger & Harrison, LLP, Los Angeles, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Mariana R. Pfaelzer, District Judge, Presiding. D.C. No. CV-91-03356-MRP.
 Before: BROWNING, PREGERSON, and ALARCON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 In 1991, plaintiff Erin Page Tucker sued her breast implant manufacturer's corporate successor Baxter Healthcare to recover for autoimmune injuries allegedly caused by breast implants she received in 1974. Although Tucker suffered from a variety of health problems starting in 1977, these problems were not diagnosed as an incurable autoimmune disease until 1988. Furthermore, Tucker purportedly did not discover the relationship between her ruptured silicone gel breast implants and her autoimmune disease until 1990. The district court granted summary judgment to Baxter Healthcare based on the running of the one-year statute of limitations.
 
 
 2
 Tucker appeals from the grant of summary judgment. We reverse and remand for further proceedings based on the tolling of the statute of limitations and the existence of material facts in dispute. We write to clarify when the statute of limitations can be tolled where one's physical injuries are not commonly thought to relate to a malfunctioning product. We decline to address other grounds raised by Tucker.
 
 I.
 
 3
 In 1974, Dr. Robert Oneal surgically inserted silicone gel breast implants into Tucker. About two years later, Tucker began to experience breast hardening, a common side-effect, from her implants. To relieve this breast hardening, Dr. Oneal performed a closed capulsotomy on Tucker in 1981.[1] The procedure was temporarily successful. But, by 1986 Tucker's breast hardening had reoccurred. She was concerned about this problem and consulted Dr. Kern, a Beverly Hills plastic surgeon. Dr. Kern told Tucker that the best treatment for her breast hardening was to replace her silicone implants with saline implants.
 
 
 4
 While Tucker suffered from breast hardening, she also suffered from other health problems. In 1977, Tucker began to experience such problems as fatigue, pain and numbness, and cognitive dysfunction. As these health problems worsened, Tucker consulted Dr. Alan Levin, an immunologist, in 1982. For the next several years, Dr. Levin tried to determine the cause of Tucker's various health problems (excluding the breast hardening directly attributable to her silicone implants). Tucker also experienced additional problems such as arm pain resulting in the inability to fully use her right arm in 1986. In 1988, Dr. Levin diagnosed Tucker with human adjuvant disease, an incurable autoimmune disorder. The cause of the autoimmune disease was unclear. There is a disputed issue of material fact as to whether Dr. Levin told Tucker that silicone could be the cause of her autoimmune disease in 1988.
 
 
 5
 In 1989, Tucker decided to undergo the breast implant replacement surgery suggested by Dr. Kern three years earlier. Tucker went back to Dr. Oneal, her original treating physician, for the replacement surgery. In preparation for surgery, Dr. Oneal consulted with Dr. Levin about Tucker's other health problems. Dr. Levin told Dr. Oneal about his concern regarding the presence of silicone in the lining of the replacement saline implants. Whether Dr. Oneal told Tucker about Dr. Levin's concerns regarding silicone, however, is also a material fact in dispute. In October 1989, Tucker had her silicone gel implants replaced with saline implants. The surgery revealed that one of Tucker's silicone gel implants had ruptured. After surgery Tucker's arm pain subsided.
 
 
 6
 When Tucker next met with Dr. Levin regarding her autoimmune disease in January 1990, she told him that her implant replacement surgery had revealed that one of her silicone implants had ruptured. Dr. Levin then told Tucker "[y]ou probably have human adjuvant disease because of the ruptured breast implant. This is no doubt the source of your problems." That spring, Tucker joined a support group for women with breast implant problems. Through this group, Tucker learned that the FDA had never reviewed manufacturer safety data on breast implants and never approved breast implants for use in humans; that breast implant manufacturers did not perform any long term safety tests on animals or humans; and that the manufacturers knew that silicone implants bled silicone oil into the body, and that silicone oil could stimulate the immune system.
 
 
 7
 After learning of this misconduct, Tucker believed that her breast implant manufacturer's wrongdoing was the cause of her autoimmune injuries. On October 12, 1990, Tucker filed a diversity suit in federal district court against Baxter Healthcare, the corporate successor of her silicone breast implant manufacturer. In her complaint, Tucker alleged strict products liability, breach of implied and express warranties, fraud, and negligent misrepresentation. Tucker is only seeking damages related to her autoimmune injuries.
 
 
 8
 Baxter Healthcare filed a motion for summary judgment asserting that the one-year statute of limitations had run on Tucker's claim. Baxter Healthcare alleged that Tucker suspected or should have suspected wrongdoing in relation to her implants before October 12, 1989. In her opposition to Baxter Healthcare's summary judgment motion, Tucker admitted that she had suffered pain, breast hardness, and the inability to use her right arm by 1986, but argued that these symptoms should not have caused her to suspect wrongdoing that would trigger the one-year limitations period for her autoimmune injuries.
 
 
 9
 The district court granted Baxter Healthcare's summary judgment motion. The court stated that it was undisputed that Tucker had suffered several problems by 1986 and that Tucker associated these problems with her breast implants. The court also pointed out that Tucker planned to have her implants removed as a result of the breast hardening. The district court concluded that these physical injuries-breast hardening, pain, and inability to use her right arm-were sufficient to "create a reasonable suspicion of wrongdoing," triggering the statute of limitations. But the district court did not expressly address whether the limitations period had run as to Tucker's autoimmune disease injuries because all counsel failed to call to the court's attention Ninth Circuit authority directly on point (i.e., Hopkins v. Dow Corning Corp., 33 F.3d 1116 (9th Cir.1994) (holding that the statute of limitations was tolled until the breast implant recipient suspected or should have suspected that her autoimmune disease was caused by wrongdoing)).
 
 II.
 
 10
 Tucker appeals the district court's grant of summary judgment to Baxter Healthcare. Tucker contends that the district court erred by determining that specific physical injuries--breast hardening, pain, and inability to use her right arm--triggered the limitations period because these injuries were unrelated to her autoimmune disease claim. Tucker also asserts that the district court erred in granting summary judgment to Baxter Healthcare because genuine issues of material fact were disputed regarding the events that triggered the running of the statute of limitations on Tucker's autoimmune disease claim.
 
 
 11
 We review de novo the district court's decision to grant summary judgment. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). Summary judgment is only proper if there are no genuine issues of material fact for trial and the district court correctly applied the law. Id.; see also Fed.R.Civ.P. 56(c).
 
 III.
 
 12
 Under California law, personal injury actions resulting from products liability claims must be filed within one year of the accrual of plaintiff's claim. See Cal.Civ.Proc.Code § 340(3) (West 1998). The cause of action accrues on the date of the injury unless the discovery rule applies. See Hopkins v. Dow Corning, 33 F.3d 1116, 1120 (9th Cir.1994). "Under California's discovery rule, the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." Id. (citing Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)). Thus, California's statute of limitations can be tolled when plaintiff's physical injury is not commonly thought to relate to a malfunctioning product. Tolling depends on whether plaintiff suspected or should have suspected that the malfunctioning product may have caused the injury in question. Id.
 
 
 13
 In Hopkins, the plaintiff received silicone gel breast implants in 1976. She had a number of health difficulties with her implants in 1976 and 1977, requiring her to have corrective surgery. In 1979, Hopkins was diagnosed with mixed connective tissue disease ("MCTD"), a type of autoimmune disease. In 1986, Hopkins suffered additional problems with her breast implants. As a result, she underwent corrective surgery. The surgery revealed that Hopkins' silicone implants had ruptured. In 1987, Hopkins learned of the possible connection between ruptured implants and her autoimmune disorder from her mother.[2]
 
 
 14
 Dow, the implant manufacturer, argued that the statute of limitations began running when Hopkins first became aware that her implants had ruptured. This court disagreed, holding that "the applicable statute of limitations was tolled until Hopkins' discovery [of the relationship between silicone breast implants and her autoimmune disease] in December, 1987." Id. at 1123. In so holding, we stated that at the time Hopkins discovered that her implants had ruptured, a timely investigation would not have revealed the relationship between silicone implants and autoimmune disease. See id. Further, "it is not commonly understood that there is any connection, let alone a direct connection, between breast implants and MCTD," and "the purpose of breast implants is not to prevent autoimmune disease." Id.
 
 
 15
 Baxter Healthcare cites Goldrich v. Natural Y Surgical Specialties, Inc., 25 Cal.App.4th 772, 31 Cal.Rptr.2d 162 (1994), and Bristol-Myers Squibb Co. v. Superior Court, 32 Cal.App.4th 959, 38 Cal.Rptr.2d 298 (1995), as controlling authority. Baxter Healthcare argues that Tucker's undisputed physical injuries related to her breast implants--breast hardening, pain, and inability to use her right arm--triggered the statute of limitations as to claims for all injuries stemming from her breast implants, including her autoimmune disease. However, in relying on Goldrich and Bristol-Myers, Baxter Healthcare fails to distinguish between injuries related directly to breast implants (e.g., chest pain and migration of implants) and injuries with no obvious connection to implants (e.g., an autoimmune disease). Where the injury claimed is not commonly associated with the malfunctioning product, Hopkins applies, tolling the statute of limitations. Unlike the injuries suffered by the plaintiffs in Goldrich and Bristol-Myers, Tucker's autoimmune disease would not cause a reasonable person to suspect wrongdoing by the breast implant manufacturer. Any possible causal relationship between silicone implants and autoimmune disease was not well-known in 1986, when the district court, without the benefit of Hopkins, incorrectly held the limitations period began to run.
 
 
 16
 Accordingly, under our decision in Hopkins, California's one-year statute of limitations should be tolled until Tucker suspected or should have suspected that her ruptured silicone breast implants were a likely cause of her autoimmune disease.
 
 IV.
 
 17
 To succeed in its motion for summary judgment, Baxter Healthcare must demonstrate that the undisputed facts show that before October 12, 1989, Tucker knew or should have known that her autoimmune disease may have been caused by wrongdoing. When the matter was heard on summary judgment, both parties agreed to the following facts: Tucker suffered from various health problems, including fatigue, pain and numbness, and cognitive dysfunction starting in 1977; Tucker's breasts had become "like stone" by 1986; Dr. Kern advised Tucker in 1986 that the only treatment for her breast hardening was saline replacement; Tucker had pain in her right arm rendering it disabled by 1986; and Tucker decided to remove her silicone implants in 1989.
 
 
 18
 The undisputed facts cited above do not demonstrate that before October 12, 1989 Tucker suspected or should have suspected that Baxter Healthcare's alleged wrongdoing may be the cause of her autoimmune disease. Tucker asserts that prior to Dr. Levin's warning in January 1990 neither her doctors nor the implant manufacturer told her of any possible link between silicone gel implants and autoimmune disease. Furthermore, the physical injuries Tucker did attribute to her breast implants would not have caused a reasonable person to suspect that the manufacturer's wrongdoing may be the cause of her autoimmune disease. Tucker could have reasonably believed the breast hardening, pain, and difficulty using her right arm were the expected side-effects of having breast implants, even though the complications were more severe than the warnings Dr. Oneal gave her before the original surgery. This is particularly true because breast hardening was a known side-effect that both the implant manufacturer and Tucker's doctors had warned her about.
 
 
 19
 Moreover, even if Tucker had investigated potential wrongdoing regarding her silicone implants in 1986, when she experienced breast hardening, pain, and loss of arm mobility, she probably would not have been able to locate information regarding the possible link between silicone breast implants and autoimmune disease. As of 1986, there was only one article in a medical journal associating silicone implants with autoimmune disease. See Hopkins, 33 F.3d at 1123 n. 4. Further, Tucker, like Hopkins, was a lay person who would be unlikely to find such an article. Id. at 1123. Thus, Tucker had no reason to suspect wrongdoing in relation to her autoimmune disease.
 
 
 20
 In addition, the parties specifically dispute when Tucker first learned that her autoimmune injuries could have been caused by her silicone implants. Baxter Healthcare alleges that Dr. Levin first informed Tucker about such a connection in May 1988, and also in October 1989. In contrast, Tucker alleges that Dr. Levin did not tell her of the connection between silicone implants and her autoimmune disease until January 1990. Accordingly, we conclude that genuine issues of material fact exist as to when the one-year statute of limitations began to run, thus precluding summary judgment.
 
 
 21
 REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 A closed capulsotomy is a procedure involving forcefully squeezing the breast by hand to rupture the scar tissue
 
 
 [2]
 It is unclear how Hopkins' mother learned of the potential connection between ruptured silicone implants and autoimmune disease. See id. at 1119 n. 2