In re BRIDGESTONE/FIRESTONE, INC., Tires Products Liability Litigation.

This Order Relates to: Giampaolo Mancuso, Plaintiff,

v.

Bridgestone/Firestone, Inc., et al., Defendants.

Javier Ferrer, et al., Plaintiffs,

v.

Bridgestone/Firestone, Inc., et al., Defendants.

Steven Wilkinson, et al., Plaintiffs,

v.

Bridgestone/Firestone, Inc., et al., Defendants.

Master File No. IP–00–9373–C–B/S, Individual Case Nos. IP–01–5355–C–B/S, IP–01–5256–C–B/S, IP–01–5258–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

April 29, 2002.

984

Don Barrett, Barrett Law Office PA, Lexington, MS, Victor Manuel Diaz Jr., Podhurst, Orseck, Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson Hicks Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, William E. Winingham, Wilson Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.

John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Daniel P. Byron, Bingham McHale, LLP, Indianapolis, IN, Mark Herrmann, Jones Day Reavis & Pogue, Thomas S Kilbane, Squire Sanders & Dempsey LLP, Cleveland, OH, Mark Merkle, Krieg Devault LLP, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight LLP, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

## ENTRY DENYING MOTIONS FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS

BARKER, District Judge.

### I. Introduction

This entry addresses summary judgment motions filed by Defendant Bridgestone/Firestone North American Tire, LLC ("Firestone") in three of the personal injury/wrongful death cases pending in this Multidistrict Litigation.[1] Firestone asserts, as the basis for these motions, that the plaintiffs' claims are barred by the applicable statutes of limitations. The first two cases, *Mancuso* and *Ferrer*, are governed by California law. The last case, *Wilkinson*, is governed by the substantive law of Arizona.[2] For the reasons set forth below, we DENY the motions for summary judgment in *Ferrer*, *Mancuso*, and *Wilkinson*.[3]

The Court emphasizes at the outset that, although MDL litigants and counsel can and should heed the guidance provided by these rulings as to the appropriate application of the statute of limitations principles at issue, varying factual records and governing state laws may well produce different outcomes.[4]

### II. Applicable Standards

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." "A genuine issue of fact exists only when a reasonable jury could find for the party opposing the motion

---

1. Defendant Purcell Tire Company ("Purcell") has also filed a motion to dismiss in *Wilkinson*. In its reply brief, Purcell asks us to treat its motion to dismiss as a motion for summary judgment if we determine that dismissal on the pleadings is not appropriate. Inasmuch as Purcell's motion to dismiss raises the same substantive legal issues as Firestone's motion for summary judgment, the Court has considered both motions in the same procedural posture.

2. Ferrer and Mancuso are both California residents and the accidents at issue occurred in California. The parties agree that California substantive law governs their cases. The Wilkinsons are residents of Arizona and filed this action in Arizona. The parties agree that Arizona substantive law applies to the claims in that action. Therefore, the Court has not done an independent choice of law analysis. *See Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir.2000) (citing *Harter v. Iowa*

*Grain Co.*, 211 F.3d 338, 352–53 n. 12 (7th Cir.2000) ("[W]e forego choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected.")).

3. Also **DENIED** is the Wilkinsons' Motion to Strike Firestone's Citation of Supplemental Authority; in ruling on the instant motion the Court has given the supplemental authority submitted by Firestone the appropriate weight.

4. For example, Firestone has submitted as supplemental authority in *Wilkinson* and *Mancuso* a recent opinion from the Western District of Pennsylvania in *Bush v. Firestone Tire and Rubber Co., Inc.*, in which the court applied Pennsylvania law and granted summary judgment in favor of the defendants on statute of limitations grounds under facts similar to those in the instant cases.

based on the record as a whole." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir.2000) (citation omitted). Thus, "the existence of some metaphysical doubt as to the material facts" is not sufficient to defeat summary judgment. *Id.* The court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." However, the nonmovant "may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact." *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir.1994) (citation omitted).

Our task in resolving the summary judgment motions before us is to determine what the California Supreme Court (in the *Ferrer* and *Mancuso* cases) and the Arizona Supreme Court (in the *Wilkinson* case) would rule if faced with the same question. *Research Systems Corp. v. IPSOS Publicite*, 276 F.3d 914, 925 (7th Cir. 2002).

## III. The *Ferrer* and *Mancuso* Cases

### A. *The Relevant Facts in Ferrer*

Plaintiff Javier Ferrer alleges that on July 9, 1999, he was driving his Ford Explorer on a freeway in Los Angeles County, California, with plaintiff Gregory Ferrer[5] as a passenger. He further alleges that at that time one of his Firestone Wilderness AT tires experienced a tread separation, causing Ferrer to lose control of the Explorer, which rolled over.

Ferrer maintains that at the time of the accident, he was unaware that defective design or manufacture of the tire may have contributed to the accident. He also maintains that, although he periodically reads newspapers and watches television to remain informed about important news, he was unaware of any report before August of 2000 relating to the negligent design or manufacture of certain Firestone tires. Ferrer asserts that he first learned that the conduct of Firestone 'may have caused or contributed to his injuries when he received a notice from Firestone in August 2000. He then filed this action on November 6, 2000.

### B. *The Relevant Facts in Mancuso*

Plaintiff Giampaolo Mancuso has similarly brought an action against Firestone, Ford Motor Company, and "Doe" defendants[6] for personal injuries arising from an accident that occurred on or around March 3, 1999.[7] On that date, Mancuso alleges, he was traveling on a California freeway when the tread on his Firestone Radial ATX tire separated, causing his Ford Explorer to roll over.

Following the accident, the California Highway Patrol prepared a written report noting that Mancuso's right rear wheel[8] "had a large area of tread missing" and that the "tread was missing from one part of the wheel only which indicates a locked wheel skid." The report noted in a section denominated "Cause" that the plaintiff "felt a tire lock on the rear of his vehicle," and that the subject tire was found to be "flat" with "no obvious blowout area [ ] located." (Slezak Declaration Ex. 3) Man-

---

**5.** Firestone has not sought summary judgment on Gregory's claims. Although the parties' submissions do not make this clear, the Court surmises that Gregory was a minor at the time of the accident. All subsequent references to "Ferrer" are to Javier.

**6.** Mancuso has settled his claims against Ford Motor Company.

**7.** The record reflects some confusion about the exact date of the accident, but the disparity is irrelevant to the Court's analysis.

**8.** The record also reflects some confusion about which tire failed, but this confusion does not have any bearing on the issues presented by the motion for summary judgment.

cuso testified in his deposition that several days following the accident, he observed that there was tread missing from the subject tire. He also testified that when he asked the mechanic who had inspected the Explorer what he thought had caused the rollover, the mechanic responded that "[h]e was not sure. He was talking in general about the car. It could be the tire...." (Supplemental Slezak Declaration Ex. 6 Tab I)

Mancuso filed his complaint on December 7, 2000, alleging that he did not become aware of the underlying cause of his accident until August 2000, when various news reports informed him of similar incidents involving Firestone tires and Ford Explorers. (Complaint ¶ 10)

### C. Analysis Under California Law

Ferrer's complaint was filed sixteen months after and Mancuso's complaint about twenty-one months after the accidents at issue. Firestone argues that both actions are barred by California's one-year statute of limitations applicable to personal injury actions set forth in California Code of Civil Procedure Section 340(3). Both plaintiffs maintain that the limitations period did not begin to run until they discovered their claims against Firestone based on tire defect in August of 2000, when those alleged defects were widely reported by the media (and, in Ferrer's case, when he received a recall notice).[9]

Firestone, for its part, contends that the one-year limitations period began to run on the date of the accidents—that on those dates (or at least shortly thereafter) the plaintiffs knew that they had been injured and knew or should have known that tire failure was the cause of their accidents.

Because the Ferrer and Mancuso complaints were indisputably filed more than one year after the accidents at issue, we address only this question: Under California law, is Firestone entitled to judgment as a matter of law that Ferrer and Mancuso discovered or reasonably should have discovered their causes of action more than one year before they filed their complaints?

We begin with a distillation of the principles of discovery accrual announced by the California appellate courts that are potentially applicable under the facts presented. In *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Cal.1999), the California Supreme Court addressed at length the application of the discovery rule. It began by noting that neither the defendant nor the plaintiff can lay claim to "public policy" as an ally:

> [T]he affirmative defense based on the statute of limitations should not be characterized by courts as either "favored" or "disfavored." The two public policies identified above—the one for repose and the other for disposition on the merits— are equally strong, the one being no less important or substantial than the other.

*Id.* at 396, 87 Cal.Rptr.2d 453, 981 P.2d 79.

The *Norgart* court then broadly stated the discovery rule as follows: "It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. *Id.* at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (citations omitted). That standard has been repeatedly articulated by California courts to mean that *"the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done*

---

**9.** Ferrer and Mancuso also argue that the statute of limitations was tolled because Firestone fraudulently concealed the defects in its tires from them and the rest of the American public until some of the allegedly defective tires were recalled in August 2000. Because we deny summary judgment on other grounds, we need not, and therefore do not, address the issue of fraudulent concealment in this ruling.

*something wrong to her." Clark v. Baxter Healthcare Corp.,* 83 Cal.App.4th 1048, 100 Cal.Rptr.2d 223 (Cal.Ct.App.2000) (citations omitted). "Wrong," when used by the California courts in this context, does not signify any technical, legal meaning, but rather is applied "in accordance with its 'lay understanding.'" *Norgart,* 21 Cal.4th at 397–98, 87 Cal.Rptr.2d 453, 981 P.2d 79 (citation omitted).

 Several other principles applied by the California appellate courts inform our analysis. First, accrual of a claim is triggered by *suspicion;* it is not necessary that the plaintiff be aware of the specific facts necessary to establish the claim. *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1111, 245 Cal.Rptr. 658, 751 P.2d 923 (Cal. 1988). Second, a plaintiff has reason to be suspicious when he has "notice or information of circumstances to put a reasonable person on inquiry." *Norgart,* 21 Cal.4th at 398, 87 Cal.Rptr.2d 453, 981 P.2d 79. Third, a plaintiff must seek to learn the facts necessary to bring the claim—he cannot sit back and wait for the facts to "find him." *Id.* (citation omitted). Fourth, the plaintiff's failure or inability to discover the *identity* of the wrongdoer does not postpone the accrual of the cause of action. *Id.* at 399, 87 Cal.Rptr.2d 453, 981 P.2d 79. Fifth, a plaintiff who seeks to rely on discovery principles to avoid the statute of limitations bar bears the burden of establishing the facts underlying her inability to discover the claim. *McKelvey v. Boeing*

*North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (Cal.Ct.App. 1999).[10]

Finally, and perhaps most important at this procedural juncture, resolution of the discovery inquiry is normally a question of fact. *Jolly,* 44 Cal.3d at 1112, 245 Cal. Rptr. 658, 751 P.2d 923. Unless the uncontradicted facts are susceptible of only one legitimate inference—that the plaintiff discovered or should have discovered her claim more than a year before filing suit— then summary judgment must be denied. *Id.* As one California appellate court explained,

> [W]e are required to examine the undisputed facts to determine whether only one legitimate inference may be drawn from them regarding the amount of notice or information of circumstances that would put a reasonable person on inquiry about potential wrongdoing that harmed her, such as will begin the running of the limitations period.

*Clark,* 83 Cal.App.4th at 1055, 100 Cal. Rptr.2d 223; *see also Unjian v. Berman,* 208 Cal.App.3d 881, 889, 256 Cal.Rptr. 478 (Cal.Ct.App.1989).

 Firestone's argument in each of these cases is simple: The plaintiffs discovered or should have discovered their claims immediately after their accidents when they became aware that their tires had experienced tread separation. That argument depends, however, on a logical link Firestone does not articulate—that

**10.** Relying on *McKelvey,* Firestone argues that the plaintiffs, because their complaints reveal a statute of limitations defense on their faces, had a strict obligation to *plead* the factual bases supporting their invocation of the discovery rule. We reject this argument. Whether the basis for the discovery rule need be pleaded in the complaint is a matter of federal procedural law; therefore federal law, and specifically the Seventh Circuit's interpretation of it, provides the appropriate standard for resolving that question. *See In re*

*Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1176 (D.C.Cir.1987) (law of circuit in which transferee court is situated applies to federal issues), *judgment aff'd. by Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). The Seventh Circuit has held that "[t]he statute of limitations is an affirmative defense [and c]omplaints need not anticipate or plead around affirmative defenses." *Leavell v. Kieffer,* 189 F.3d 492, 494 (7th Cir.1999).

knowledge a product has *failed* constitutes, *as a matter of law,* inquiry notice that the product could be *defective* as a result of the wrongful or negligent conduct of another. We find that California law does not permit this court to supply that link as a matter of law.

This question has been squarely addressed by California courts in a number of decisions. In *Tucker v. Baxter Health-care Corp.,* 158 F.3d 1046 (9th Cir.1998), the Ninth Circuit Court of Appeals, applying California law, reversed the district court's summary judgment in favor of the manufacturer on statute of limitations grounds. The plaintiff had sued the manufacturer in 1991 to recover for autoimmune injuries allegedly caused by breast implants she had received in 1974. The facts revealed that she had suffered from a variety of health problems beginning in 1977, was diagnosed with autoimmune disease in 1988, but did not discover the alleged causal link between her implants and her autoimmune disease until 1990. *Id.* at 1047.

The Ninth Circuit acknowledged that under California's discovery rule, "the accrual of a cause of action is delayed until the plaintiff is aware of her injury and its *negligent cause."* *Id.* at 1049 (quoting *Jolly,* 44 Cal.3d at 1109, 245 Cal.Rptr. 658, 751 P.2d 923) (emphasis added). It then framed the inquiry for summary judgment purposes as whether the injury alleged was so commonly associated with a defective product that a reasonable person would suspect wrongdoing by the manufacturer. *Id.* at 1049–50. Finding that common association lacking (or at least not indisputably established), the Ninth Circuit held that summary judgment was inappropriate. *Id.* at 1050.

In *Clark,* 83 Cal.App.4th 1048, 100 Cal. Rptr.2d 223, the plaintiff nurse brought an action against the manufacturer and suppliers of the latex gloves she used on the job. For a number of years she had been aware of her allergy to latex. In other words, she knew that the latex gloves were making her sick. Within a year of her filing suit, however, she first became aware from an article she read of the possibility that it was the defective manufacture of the latex gloves that had made her sick.

The defendant in *Clark* argued, as does Firestone here, that more than a year before the filing of the action, the plaintiff was aware of her injuries, attributed those injuries to the subject latex gloves, and suspected or should have suspected that there was something wrong with them. *Id.* at 1053, 100 Cal.Rptr.2d 223. The court rejected that argument:

> [I]t cannot be said that Clark had discovered all of the essential facts to constitute a products liability cause of action when she learned of her allergy, since triable issues of fact have been raised regarding her knowledge or awareness that a defendant's wrongdoing may have affected the product. . . . [T]he record does not support only one inference as to when this knowledge was available to Clark. . . .

*Id.* at 1058–59, 100 Cal.Rptr.2d 223.

Similarly, in *Ward v. Westinghouse Canada, Inc.,* 32 F.3d 1405 (9th Cir.1994) (applying California law), the court addressed a claim by a worker that he was injured by the defective design of his computer keyboard. The evidence was that he knew, more than one year before filing suit, that the keyboard was the *source* of his injury, but that he did not know of a *defect* in its design. The Ninth Circuit explained: "The remaining question is whether a reasonable person in his position, knowing or suspecting that using a keyboard was the source of his trouble, would have been on inquiry notice of 'wrongdoing' [at that point]." *Id.* at 1407–08. The court concluded that a jury could find that the plaintiff's knowledge that the product had

caused his injury did not indicate that he was on "inquiry notice of wrongdoing on the part of a third party." *Id.* at 1408. It therefore reversed the granting of summary judgment on statute of limitations grounds. *Id.*

■ We find the facts and reasoning of these California decisions to be squarely applicable to the issue before us. It is not enough that Ferrer and Mancuso knew that their injuries were caused by their tires; they had to know—or have such information that a reasonable person would have to suspect—that their injuries were caused by a defect in the tires.[11]

Ferrer maintains that, even though he generally kept himself informed of such matters, he did not learn of an alleged link between his injuries and someone's wrongdoing until he received a recall notice from Firestone and saw media accounts report-

ing such a link. Evidence in the record shows that Mancuso did attempt to ascertain the cause of his accident and that the information provided to him was that the tread separation had been caused by a "tire lock."[12]

The undisputed evidence does not permit the single inference urged by Firestone—that Ferrer and Mancuso discovered or reasonably should have discovered their claims more than one year before their complaints were filed. We therefore DENY Firestone's motion for summary judgment in *Ferrer* and DENY Firestone's motion for summary judgment in *Mancuso*.

## IV. The *Wilkinson* Case

### A. The Relevant Facts

The facts relevant to the statue of limitations issue, viewed in the light most fa-

---

**11.** We certainly do not intend to suggest that this determination can never be made as a matter of law. Indeed, a number of California appellate courts have rejected the plaintiff's reliance on discovery accrual under the facts and allegations presented. *See, e.g., Norgart,* 21 Cal.4th at 405–06, 87 Cal.Rptr.2d 453, 981 P.2d 79 (summary judgment affirmed where plaintiff admitted he suspected, several years before filing, that someone had done something wrong to cause decedent's death); *O'Connor v. Boeing North American,* 92 F.Supp.2d 1026 (C.D.Cal.2000), and *McKelvey,* 74 Cal.App.4th 151, 86 Cal.Rptr.2d 645 (both involving numerous media reports, notices, and public meetings of the alleged wrongful conduct for years preceding the suits).

An argument could be made that the result reached in *Braxton–Secret v. A.H. Robins Co.,* 769 F.2d 528 (9th Cir.1985), one of the cases cited by Firestone, is inconsistent with the conclusion we draw here. In that case, the court held that, as a matter of law, the plaintiff was on inquiry notice of a defect in her IUD when she learned of her pregnancy. We determine, however, that the holding of *Braxton–Secret* does not compel a different result here. First, the Ninth Circuit, which was applying California law, did not have the ben-

efit of the California courts' decisions in *Norgart, Clark,* and other more recent decisions applying the discovery rule in this context. Second, the *Braxton–Secret* opinion suggests that the court took into account the relatively low failure rate of the IUD not attributable to defect when it concluded that a reasonable person would have to have been on inquiry notice of defect upon knowledge of product failure. Where, as here, no one argues more emphatically than Firestone that tire failure is a common event and rarely attributable to defect in the tire, we are unwilling to conclude as a matter of law that a reasonable person must have been on inquiry notice of the alleged defect. *See Tucker,* 158 F.3d at 1049–50.

**12.** Mancuso's opposition to Firestone's motion for summary judgment has required this court to stretch to the limits of its ability to draw inferences from the evidence. Mancuso did not even submit his own declaration in opposition to summary judgment. Rather, the Court was required to infer from Mancuso's receipt of the police report (and the information therein) and Mancuso's deposition testimony submitted by *Firestone* that a jury could find his action timely under California's discovery rule.

vorable to the plaintiffs, are as follow. On August 7, 1997, a Firestone tire on a Ford Explorer being driven on a California highway by Brent Wilkinson, the plaintiffs' son, experienced a sudden tread separation, which in turn caused the Explorer to roll over. Brent died at the scene of the accident from the injuries he sustained.

The Traffic Collision Report prepared by California Highway Patrol Officer Floyd Harris, who was at the scene of the accident, states the following under the "CAUSE" heading:

> [Brent] caused this collision by being in violation of section 22107 VC which states in part that no person shall turn a vehicle from a direct course or move left or right upon a roadway until such movement can be made safely. Other associated factor was the fact that the tread on the right rear tire came off [the Explorer]. [Brent's] evasive action turning the wheel of [the Explorer] to the left caused this collision.

Exhibit 1 to Plaintiffs' Statement of Facts at 14. After the accident, Plaintiff Stephen Wilkinson, Brent's father, spoke to Officer Harris to obtain more information about the accident. Officer Harris reiterated his opinion, as set forth in his report, that Brent had caused the accident by "over steering" the Explorer in response to the tread separation. Mr. Wilkinson asked Officer Harris if there were problems with the tire that caused the tread separation; Officer Harris responded that experts from San Diego would examine the tire as part of the official investigation of the accident.

The California Highway Patrol Border Division Multi–Disciplinary Accident Investigation Team conducted a "limited investigation" into Brent's accident, including a visual examination of the Explorer.

In a report prepared by Investigator Alan Coulter, the investigators reported that no "mechanical inspection and/or tire and wheel examination of the vehicle" was warranted. Upon receiving this report, Mr. Wilkinson spoke with Investigator Coulter and asked him about the cause of the tread separation, and specifically why an examination of the tire was not performed. Investigator Coulter responded that he did not believe that the accident was caused by any defect in the tire because it remained inflated after the tread separated, and therefore it was not necessary to examine the tire for defects. He concurred with Officer Harris's opinion that the accident was caused by Brent's over-steering in reaction to the tread separation, not by the tread separation itself.

Mr. and Mrs. Wilkinson saw no reason to doubt the conclusions of Officer Harris and Investigator Coulter, and did not attempt to investigate the cause of Brent's accident, or of the tread separation, any further until August 2000, when they saw news reports discussing incidents of rollover accidents in Ford Explorers caused by tread separations in Firestone tires. As a result of those news reports, the Wilkinsons began to suspect that Brent's accident was caused by defects in the tire and/or the Explorer. They promptly contacted an attorney, who filed a complaint on their behalf in Arizona state court on January 18, 2001.[13]

### B. *Analysis Under Arizona Law*

Firestone and Purcell argue that the Wilkinsons' claims are barred by Arizona's two-year statute of limitations for wrongful death actions, *see* A.R.S. § 12–542, because their complaint was filed more than two years after the date of Brent's acci-

---

**13.** The case was subsequently removed to the United States District Court, District of Arizona, and later transferred to this MDL.

dent. The Wilkinsons counter that their claims did not accrue until August 2000, when they first saw news reports that suggested that Brent's accident was caused by "the combination of a defective Firestone tire with the rollover-prone Ford Explorer," Plaintiffs' Response at 2, and therefore their January 2001 complaint was timely filed.[14]

■ Arizona applies the discovery rule to wrongful death actions. *Lawhon v. L.B.J. Institutional Supply, Inc.*, 159 Ariz. 179, 765 P.2d 1003, 1005 (Ct.App.1988) (citing *Anson v. American Motors Corp.*, 155 Ariz. 420, 747 P.2d 581 (Ct.App.1987)). " 'Pursuant to the discovery rule, a cause of action does not "accrue" until a plaintiff discove rs or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendant's negligent conduct.' " *Id.* (quoting *Anson*, 747 P.2d at 584). Indeed, "[t]he cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation," in other words, that he or she has been injured "by a *particular* defendant's negligent conduct." *Id.* at 1007, 747 P.2d 581. At what point a plaintiff knew, or in the exercise of reasonable diligence should have known, that a particular defendant caused his or her injury is a question of fact which ordinarily must be decide d by the jury. *Anson*, 747 P.2d at 588 (citation omitted) ("Whet her a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he might have learned such fact' ... *when facts are susceptible to opposing inferences* are themselves questions of fact to be determined by the jury or the trial court."); *see also Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Amer.*, 182 Ariz. 586, 898 P.2d 964, 969 (1995) ("[T]he statute of limitations did not commence on Gust's claim until Gust knew or in the exercise of reasonable diligence should have known that it had been injured. The trial court was correct to let the jury decide when that event occurred.").

In *Anson*, the Arizona Court of Appeals applied the discovery rule to facts that are very similar to those in the instant case. The Ansons' son died from injuries he sustained in a rollover accident involving a Jeep CJ-7. The plaintiffs knew at the time of the accident that their son had lost control of the Jeep, that it had overturned, that the roll bar had collapsed, and that their son had died of massive head injuries. However, they alleged that they did not know at the time of the accident that the Jeep was defective in that it had an unreasonable propensity to overturn and its roll bar was structurally inadequate to protect the Jeep's occupants when a rollover occurred. The plaintiffs alleged that they did not learn of these defects, and therefore their claim did not accrue, until they saw a television program about problems with the Jeep more than a year after the accident.[15]

---

14. Like Ferrer and Mancuso, the Wilkinsons make a fraudulent concealment argument that we do not address here. *See supra* note 9.

15. The plaintiffs in *Anson* further alleged that the manufacturer of the Jeep had fraudulently concealed the defects in the Jeep by representing it as a safe vehicle and denying that it was defective until a year after the television program aired, when it entered into a consent decree requiring it to place warning stickers on the Jeep. The plaintiffs argued that the statute of limitations had been tolled because of this fraudulent concealment by the defendant. The court considered the facts relevant to the fraudulent concealment claim as also relevant to the question of when the plaintiffs should have known of their cause of action—in other words, it likely would not be unreasonable for a plaintiff to fail to discover a defect that the defendant had successfully concealed.

The court in *Anson* concluded that "there were genuine issues of material fact on the issue of time of discovery." 747 P.2d at 586. In reaching its conclusion, the court relied upon the reasoning of the Second Circuit Court of Appeals in *Barrett v. United States*, 689 F.2d 324 (2nd Cir. 1982):

> The court emphasized that critical facts concerning causation were, practically speaking, not discoverable by the plaintiffs since they were in control of the government and were only selectively disclosed to the plaintiffs. The court, therefore, held that the "accrual" determination was a question of fact; and the inquiry would be what knowledge the plaintiff had regarding cause of death, whom she believed responsible, and her diligence in pursuing her claim. Finally, the court stated that when the decedent died, "[the deceased's] family had no reason to investigate any further based on the information available at the time of death."

*Anson*, 747 P.2d at 586 (citing *Barrett*, 689 F.2d at 329–30). The *Anson* court noted that the Ansons "could not have initiated and conducted the research necessary to prove the causal link between the defects in the jeep and the death of their son," *id.*, and held that it was a question for the trier of fact whether the Ansons knew or should have known more than two years before they filed suit that the defendant's conduct caused their son's death.

■ We find *Anson* to be indistinguishable from the instant case.[16] Like the plaintiffs in *Anson*, the Wilkinsons knew the basic facts about their son's accident: in *Anson*, the Jeep had overturned, the roll bar had collapsed, and their son had been killed; in the instant case, a tread separation had occurred, the Explorer had rolled over, and Brent had been killed. Also like the plaintiffs in *Anson*, the Wilkinsons have presented evidence that they were unaware of any defect in the tire until they heard allegations of defective Firestone tires on a television program. The Wilkinsons have further presented evidence that their investigation of the accident at the time led them to believe that Brent's driving, not a defective tire, had caused his death. The Court cannot say as a matter of law that in light of the circumstances the Wilkinsons' investigation was inadequate and that by the exercise of reasonable diligence they should have discovered that the alleged defects caused Brent's death.[17] Rather, the Wil-

---

**16.** Firestone correctly points out that the *Anson* court was ruling on a motion to dismiss, rather than a motion for summary judgment. While under some circumstances this difference in procedural posture is a distinguishing factor between two cases, in this case it is not. It is true, of course, that in order to survive the defendant's motion to dismiss, the plaintiffs in *Anson* were not obligated to submit evidence to support the facts relevant to the statute of limitations issue, but rather were required only to assert those facts, while to survive summary judgment a plaintiff is required to submit evidence to support the facts they assert. However, the Wilkinsons have done so, having submitted their own affidavits and those of the investigating officers to support their factual assertions.

**17.** Firestone, citing four Arizona state cases filed in or prior to March 1997, asserts that "[h]ad plaintiffs consulted an Arizona lawyer, in 1997, they would have recognized that Firestone had been sued many times, with the injured party's [sic.] expert witnesses asserting contrary opinions concerning vehicle handling and control." Firestone's Reply at 9. While the pendency of these suits certainly is relevant to the issue of whether plaintiffs should have known about the alleged defects in the tire, it does not, by itself, support the entry of summary judgment in favor of the defendants. *See Hannah*, 1994 WL 924259, at *5 (rejecting defendant's bare allegation that "numerous cases regarding similar allegations" were "well known to the plaintiffs' bar" and therefore had plaintiffs consulted an attorney they would have learned of the alleged fuel tank defects and rejecting the assumption that "the duty of due diligence *requires* that

kinsons are entitled to have a jury determine whether, under Arizona's formulation of the discovery rule, their claim was timely filed.

In addition to *Anson,* this holding also is supported by *Hannah v. General Motors Corp.,* 1994 WL 924259 (D.Ariz.1994). *Hannah* involved an accident in which the fuel tank of a pick-up truck was ruptured during a collision, killing two passengers and seriously injuring the driver. The defendant moved for summary judgment on statute of limitations grounds, and the court, applying Arizona law, including *Anson,* denied the motion, holding that the fact that the plaintiffs knew at the time of the accident that the fuel tank ruptured, causing the fire that in turn fatally injured their sons, was not sufficient to trigger the statute of limitations. Rather, the court found that "[t]he principle [sic] 'facts' giving rise to this lawsuit are not the events of the accident itself, but rather the alleged defects in the fuel tank," and, therefore, "the statute of limitations began to run when plaintiffs knew, or through the exercise of reasonable diligence should have known, that a design defect in their pickup truck's fuel tank (allegedly) caused their injuries." *Id.* at *4. The plaintiffs presented evidence that they did not know of the alleged defects in the pick-up's fuel tank until a friend told them of a news program he had seen about the issue. Whether the plaintiffs should have known about the defects earlier was a question of fact, and summary judgment therefore was inappropriate. *See also Ballew v. A.H. Robins Co.,* 688 F.2d 1325 (11th Cir.1982) (applying Georgia law and holding that issue of fact existed as to when statute of limitations began to run when plaintiff

asked three physicians whether her pelvic infection was caused by her IUD, and all three responded that they did not know).

The defendants have not cited to any Arizona case which is contrary to *Anson* or which would support summary judgment under the facts of this case. Indeed, of the numerous cases discussed by Firestone [18] on the issue of the discovery rule, only two apply Arizona law. The first, *Mack v. A.H. Robins Co.,* 573 F.Supp. 149 (D.Ariz.1983), *aff'd,* 759 F.2d 1482 (9th Cir. 1985), is a federal case applying Arizona law which was decided prior to *Anson.* The second, *Insurance Co. of North America v. Superior Court,* 162 Ariz. 499, 784 P.2d 705 (App.1989), *vacated on other grounds,* 166 Ariz. 82, 800 P.2d 585 (1990), hinges on the difference between having knowledge of the critical facts and having knowledge of the legal significance of those facts, a distinction not relevant to this case, inasmuch as the plaintiffs allege they were unaware of critical facts—the alleged defect in the tire and its role in causing Brent's accident—not that they were unaware that the law provides a remedy for those injured by defective products. While the other cases cited by the defendants may indicate that a different result would be appropriate under the law of other states, neither the parties nor the Court's own research has revealed any Arizona cases which support the defendants' arguments in this case.

■ Under Arizona law, the statute of limitations in a wrongful death action does not begin to run until the plaintiff knew, or in the exercise of reasonable diligence should have known, that his or her injury

an injured party consult an attorney"). The same is true of the fact that certain tire experts around the country may have held the opinion that certain Firestone tires were defective and prone to tread separations even before Brent's accident occurred.

18. Both defendants cite to other Arizona cases for general language regarding the discovery rule, but do not attempt to apply the facts of those cases to the instant case.

was caused by the defendant's conduct. Because the Wilkinsons have presented evidence from which a reasonable jury could find that the clock did not begin ticking in this case until August 2000, when the media began reporting about, and the Wilkinsons first heard about, alleged problems with Firestone tires on Ford Explorers, the defendants' motion for summary judgment and motion to dismiss must be **DENIED**.

## V. Conclusion

For the reasons set forth above, Firestone's motions for summary judgment in *Ferrer, Mancuso,* and *Wilkinson* are *DENIED,* as is Purcell's motion to dismiss, which we have treated as a motion for summary judgment. Also **DENIED** is the Plaintiffs' Motion to Strike Firestone's Citation of Supplemental Authority in *Wilkinson.*